UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Criminal No. 07-064 (ESH) |
| ) | |
| MONICA J. CASH, ) | |
| ) | |
| Defendant. ) | |

## PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States of America and the defendant, MONICA J. CASH, agree as follows:

1. The defendant is competent to enter into this agreement and is pleading guilty freely and voluntarily without promise or benefit of any kind, other than contained herein, and without threats, force, intimidation, or coercion of any kind.

2. The defendant knowingly, voluntarily, and truthfully admits the facts contained in the attached Factual Basis for Plea, which is incorporated by reference herein. The Factual Basis for Plea includes facts sufficient to support a plea of guilty to the charge described in Paragraph 3 of this Plea Agreement and to establish the sentencing-related factors, computation, and analysis described in Paragraph 9(b). The attached Factual Basis of Plea, however, is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to the defendant that relate to that conduct. The defendant understands that the Court is not bound by this stipulation.

3. The defendant agrees to enter a plea of guilty to the following offense charged in Count 2 of the Indictment filed against her on March 16, 2007: Uttering and Possessing a Forged Security, in violation of Title 18, United States Code, Section 513(a). The defendant admits that she is guilty of this crime, and the defendant understands that she will be adjudicated guilty of this offense if the Court accepts her guilty plea.

4. The defendant understands the nature of the offense to which she is pleading guilty, and the elements thereof, including the penalties provided by law. The maximum penalty for a violation of 18 U.S.C. § 513(a) (Uttering and Possessing a Forged Security) is ten years of imprisonment, a $250,000 fine, and a mandatory special assessment of $100. The defendant further understands that the Court may impose a term of supervised release to follow any incarceration, in accordance with 18 U.S.C. § 3583, and that, in this case, the authorized term of supervised release is not more than three years. If the Court imposes a term of supervised release and the defendant violates the terms of her release, then the defendant may be sentenced to not more than an additional two years of incarceration. The defendant also understands that the Court will impose restitution, and may impose costs of incarceration, supervision, and prosecution.

5. The defendant understands and agrees that restitution to victims of the offense described in Count 2 of the Indictment is mandatory. The loss to the victims as a result of the crime charged in Count 2 of the Indictment is estimated to be approximately $83,050. The defendant agrees not to transfer or otherwise encumber her assets except with notice to, and consent of, the undersigned representatives of the United States until such time as this agreement is filed with the Court, at which point the defendant must seek leave of Court to transfer or

otherwise encumber her assets. The parties agree that the defendant will not be required to obtain the consent of the United States for property transfers necessary to pay ordinary living expenses, ordinary business expenses, and attorneys fees. The defendant agrees as part of this agreement that she will provide to the United States detailed and accurate information identifying all of her income, assets, expenses and liabilities within 45 days of the date of this agreement in a format requested by the United States and will truthfully answer all questions relative to her finances. Thereafter, the defendant will provide on a monthly basis or as otherwise requested a report of all financial transactions valued at $500 or more, including all income, expenditures, and transfers of funds or property.

6.     If the Court accepts the defendant's plea of guilty, and the defendant fulfills each of the terms and conditions of this agreement, the United States agrees that: (1) it will dismiss Count 1 of the Indictment, which charges the offense of Bank Fraud, 18 U.S.C. § 1344, and Counts 3-10 of the Indictment, which each charge the offense of False Statements, 18 U.S.C. § 1001; (2) it will not further prosecute the defendant for any crimes described in the Factual Basis for Plea attached as Exhibit A. Nothing in this agreement is intended to provide any limitation of liability arising out of any acts of violence.

7.     The defendant understands and agrees that Federal sentencing law requires the Court to impose a sentence which is reasonable and that the Court must consider the advisory United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") in effect at the time of the sentencing in determining a reasonable sentence. Defendant also understands that sentencing is within the discretion of the Court and that the Court is not bound by this agreement. Defendant understands that the facts that determine the offense level will be found by the Court

at sentencing and that, in making those determinations, the Court may consider any reliable evidence, including hearsay, as well as provisions or stipulations in this agreement. Both parties agree to recommend that the Sentencing Guidelines should apply pursuant to United States v. Booker, 543 U.S. 220 (2004), and its progeny, and the final Sentencing Guidelines offense level as calculated herein provides for a reasonable sentence. Defendant further understands the obligation of the United States to provide all relevant information regarding the defendant, including charged and uncharged criminal offenses, to the United States Probation Office. Defendant also states that she has had ample opportunity to discuss, and has in fact discussed, the impact of the Sentencing Guidelines and the statutory maximum sentence with her attorney and is satisfied with her attorney's advice in this case.

8. Except to the extent it would be inconsistent with other provisions of this agreement, the United States and the defendant reserve, at the time of sentencing, the right of allocution; that is, the right to describe to the Court fully, both orally and in writing, the nature, seriousness, and impact of the defendant's conduct related to the charges against her or to any factor lawfully pertinent to the sentence in this case. The United States will also advise the Court of the nature, extent, and timing of the defendant's acceptance of responsibility. The defendant further understands and agrees that in exercising this right, the United States may solicit and make known the views of the law enforcement agency that investigated this matter.

9. The defendant and the United States agree that the following Sentencing Guidelines factors, computation, and analysis applies to this case:

    a. The parties agree that the 2003 Sentencing Guidelines Manual governs the guideline calculations in this case. All references in this agreement to the U.S.S.G. refer to that

manual. The parties further agree that the offense of Uttering and Possessing a Forged Security, 18 U.S.C. § 513(a), is governed by U.S.S.G. § 2B1.1.

    b.    The parties agree that the total offense level applicable to the defendant's offense conduct is Level 12. This level is calculated as follows:

    i.    Base Offense Level, § 2B1.1 .............................. 6

    ii.    § 2B.1.1(b)(1)(E) (loss of more than $70,000) .............. 8

    iii.    Expected Adjustment under § 3E1.1(a) ................... −2

    iv.    Total Offense Level .................................. 12

Assuming a Criminal History Category I, the Sentencing Guideline Range for a Total Offense Level 12 is 10-16 months (Zone C).

    c.    As indicated above, the United States agrees that it will recommend that the Court reduce by two levels the Sentencing Guideline applicable to the defendant's offense pursuant to U.S.S.G. § 3E1.1(a) ("Acceptance of Responsibility"), based on the defendant's recognition and affirmative and timely acceptance of personal responsibility. The United States, however, will not be required to make this or any other recommendation specified herein if the defendant: (1) fails to admit a complete factual basis for the plea at the time the defendant is sentenced or at any other time; (2) challenges the factual basis for the guilty plea at any time after the plea is entered; (3) denies involvement in the offense; (4) gives conflicting statements about that involvement or is untruthful with the Court, the United States, or the Probation Office; (5) fails to give complete and accurate information about the defendant's financial status to the Probation Office; (6) obstructs or attempts to obstruct justice, prior to sentencing; (7) has engaged in conduct prior to signing this plea agreement which reasonably could be viewed as

obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this plea agreement; (8) fails to appear in court as required; (9) after signing this plea agreement, engages in additional criminal conduct; or (10) attempts to withdraw her plea of guilty. If the United States does not recommend a reduction under § 3E1.1, then the United States may recommend any sentence within the range for a Total Offense Level 14.

       d.      The defendant understands that her Criminal History Category will be determined by the Court after the completion of a Pre-Sentence Investigation by the Probation Office. The defendant acknowledges that the United States has not promised or agreed that the defendant will or will not fall within any particular Criminal History Category and that such determinations could affect her Sentencing Guideline range and/or offense level as well as her final sentence.

    10.    The parties agree that the defendant may seek and advocate for a variance pursuant to 18 U.S.C. § 3553, provided that the Sentencing Guidelines applicable to the defendant are calculated as set forth above in Paragraph 9(b). The United States reserves the right to object to any such request and to advocate for a sentence within the Sentencing Guidelines as set forth in Paragraph 9(b). Moreover, the United States agrees that it will not seek or advocate for a variance pursuant to 18 U.S.C. § 3553, provided that the Sentencing Guidelines applicable to the defendant are calculated as set forth above in Paragraph 9(b). In the event that the defendant breaches any term of the plea agreement, the United States may move for enhancements or upward departures or variances based on any grounds the United States deems appropriate.

11.     The parties agree that U.S.S.G. § 5E1.2 provides that the Court shall impose a fine, unless the Court finds that the defendant is unable to pay a fine. Pursuant to the Fine Table contained in U.S.S.G. § 5E1.2(c)(3), an Offense Level of 12 provides a fine range of between $3,000 and $30,000.

12.     The United States cannot and does not make any promise or representation as to what sentence the defendant will receive or what fine or restitution the defendant may be ordered to pay. The defendant understands that the sentence in this case will be determined solely by the Court, with the assistance of the United States Probation Office, and that the Court may impose the maximum sentence permitted by the law. The Court is not obligated to follow the recommendations of either party at the time of sentencing. The defendant will not be permitted to withdraw her guilty plea regardless of the sentence recommended by the Probation Office or the sentence imposed by the Court.

13.     The defendant, knowing and understanding all of the facts set out herein, including the maximum possible penalty that could be imposed, and knowing and understanding her right to appeal her conviction and sentence as provided in 18 U.S.C. § 3742, and to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255, hereby expressly waives the right to appeal her conviction and/or any sentence within the maximum provided in the statute of conviction, or the manner in which that sentence was determined and imposed, including on the grounds set forth in 18 U.S.C. § 3742, in exchange for the concessions made by the United States in this plea agreement. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b).

14. If the defendant fails to comply with any of the terms and conditions set forth in this agreement, the United States may fully prosecute the defendant on all criminal charges that can be brought against the defendant. With respect to such a prosecution:

    a. The defendant shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other Federal rule, that the defendant's statements pursuant to this agreement or any leads derived therefrom should be suppressed or are inadmissible;

    b. The defendant waives any right to claim that evidence presented in such prosecution is tainted by virtue of the statements the defendant has made; and

    c. The defendant waives any and all defenses based on the statute of limitations with respect to any such prosecution that is not time-barred on the date that this agreement is signed by the parties.

15. If a dispute arises as to whether the defendant has knowingly committed any material breach of this agreement, and the United States chooses to exercise its rights under Paragraph 14, at the defendant's request, the matter shall be submitted to the Court for its determination at an appropriate proceeding. At such a proceeding, the defendant's disclosures and documents shall be admissible, and the United States shall have the burden to establish the defendant's breach by a preponderance of the evidence.

16. The parties agree that if the Court does not accept the defendant's plea of guilty, then this agreement will be null and void.

17. The defendant understands that this agreement is binding only upon the Public Integrity Section of the Criminal Division of the United States Department of Justice. This

agreement does not bind any other prosecutor's office or agency. It also does not bar or compromise any civil or administrative claim, including any possible claims of civil tax liability, pending or that may be made against defendant.

18.     This agreement and the attached Factual Basis for Plea constitute the entire agreement between the United States and the defendant. No other promises, agreements, or representations exist or have been made to the defendant or the defendant's attorneys by the Department of Justice in connection with this case. This agreement may be amended only by a writing signed by all parties.

FOR THE DEFENDANT:

A.J. KRAMER
Federal Public Defender

*/s/ Carlos J. Vanegas*

CARLOS J. VANEGAS
Assistant Federal Public Defender
Federal Public Defender's Office
625 Indiana Avenue, NW, Suite 550
Washington, D.C. 20004

*/s/ Monica Cash*

MONICA J. CASH

Dated: 4/19/07

FOR THE UNITED STATES:

WILLIAM M. WELCH II
Chief, Public Integrity Section

*/s/ Edward P. Sullivan*

EDWARD P. SULLIVAN
Trial Attorney, Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Avenue, NW - 12th Floor
Washington, D.C. 20005

Dated: 4/24/07

ATTACHMENT A

FACTUAL BASIS FOR THE PLEA
OF MONICA J. CASH

This statement is submitted to provide a factual basis for my plea of guilty to the charge of Uttering and Possessing a Forged Security, in violation of Title 18, United States Code, Section 513(a), as set forth in Count 2 of an Indictment filed against me in this matter on March 16, 2007.

At all relevant times:

1. The Women's Campaign Fund ("WCF") was a political committee registered with the Federal Election Commission ("FEC"). WCF was dedicated to supporting "pro-choice" women seeking political office in state and federal elections. WCF's support came in the form of direct campaign contributions, fund raising efforts, media relations, and other political activities.

2. Defendant MONICA J. CASH was employed by WCF as its Office Manager from on or about December 18, 2000, through on or about January 14, 2004.

3. The FEC was an agency of the Executive Branch of the United States Government that administered and enforced the Federal Election Campaign Act, 2 U.S.C. §§ 431-455 ("FECA").

4. A political committee registered with the FEC that seeks to influence a federal election was required to have a treasurer who was required to file periodic reports with the FEC relating to the committee's financial activities. 2 U.S.C. §§ 432(a), 434(a), 434(b).

5. SunTrust Banks, Inc. ("SunTrust") was a financial institution with branch offices located in the District of Columbia and Maryland. Deposits into SunTrust's bank accounts were insured by the Federal Deposit Insurance Corporation ("FDIC").

6.    As Office Manager, CASH was responsible for all aspects of WCF's day-to-day operations, including, among other things: tracking incoming donor contributions, disbursements, and operating expenditures; entering donor information, contributions amounts, disbursements, and expenditures into WCF's internal database; filing financial disclosure reports with the FEC and numerous state election offices on behalf of WCF's treasurer; making deposits into WCF bank accounts; and cutting checks to pay vendors and cover operating expenses; reconciling WCF's bank records and financial statements; and preparing budget reports for the organization's treasurer.

7.    Between in or around early 2001, and continuing through in or around early 2004, WCF maintained business checking accounts with SunTrust relating to WCF's fund-raising activities, affiliated Political Action Committee fund-raising activities, and non-profit, charitable contribution work. CASH did not have signatory authority on any of these business checking accounts.

8.    From on or about July 30, 2001, and continuing through on or about December 26, 2003, in the District of Columbia and elsewhere, CASH embezzled approximately $83,050 in cash from WCF by drafting approximately 58 WCF checks made payable to "Monica Cash" or "Cash." After drafting these WCF checks, CASH forged the signatures of WCF employees whom CASH believed had signatory authority on certain WCF checking accounts maintained at SunTrust.

9.    In addition to taking possession of each forged WCF check, CASH uttered them by presenting, negotiating, and depositing each forged WCF check into her personal checking

accounts at SunTrust or, alternatively, obtaining cash – all with the intent to deceive SunTrust.

The 58 transactions are as follows:

## TABLE A

| Trans. Number | Date Check Issued | Date Check Cleared | Check Number | SunTrust Acct. Where Check Drawn | Check Amount | Payee | WCF Signatory | Endorsing Signature | SunTrust Acct. Where Check Negotiated |
|---|---|---|---|---|---|---|---|---|---|
| 1. | 07/30/01 | 07/30/01 | 3685 | 206703309 | $1,500 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 2. | 08/08/01 | 08/15/01 | 7161 | 206758413 | $3,000 | Monica Cash | Illegible | Monica Cash | 703710338 |
| 3. | 08/08/01 | 08/08/01 | 7162 | 206758413 | $3,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 4. | 08/31/01 | 08/31/01 | 3687 | 206703309 | $500 | Cash | Executive Dir. | Monica Cash | |
| 5. | 09/12/01 | 09/12/01 | 7168 | 206758413 | $400 | Cash | Political Dir. | Monica Cash | 703710338 |
| 6. | 09/24/01 | 09/24/01 | 3692 | 206703309 | $2,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 7. | 10/02/01 | 10/03/01 | 7169 | 206758413 | $1,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 8. | 10/15/01 | 10/15/01 | 7171 | 206758413 | $500 | Cash | Political Dir. | Monica Cash | 703710338 |
| 9. | 10/25/01 | 10/25/01 | 7174 | 206758413 | $1,500 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 10. | 11/09/01 | 11/09/01 | 4060 | 206703279 | $1,500 | Cash | Executive Dir. | Monica Cash | 703710338 |
| 11. | 11/15/01 | 11/15/01 | 7177 | 206758413 | $1,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 12. | 11/20/01 | 11/21/01 | 3702 | 206703309 | $800 | Monica Cash | Political Dir. | Monica Cash | 703710338 |
| 13. | 11/25/01 | 11/26/01 | 3703 | 206703309 | $1,500 | Monica Cash | Political Dir. | Monica Cash | 703710338 |
| 14. | 12/14/01 | 12/17/01 | 3704 | 206703309 | $2,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 15. | 12/20/01 | 12/21/01 | 7180 | 206758413 | $1,000 | Monica Cash | Illegible | Monica Cash | 703710338 |
| 16. | 12/24/01 | 12/24/01 | 7181 | 206758413 | $600 | Cash | Executive Dir. | Monica Cash | 703710338 |
| 17. | 01/04/02 | 01/04/02 | 4107 | 206703279 | $300 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 18. | 01/11/02 | 01/11/02 | 4117 | 206703279 | $500 | Cash | Executive Dir. | Monica Cash | 703710338 |
| 19. | 01/29/02 | 01/29/02 | 7184 | 206758413 | $600 | Cash | Executive Dir. | Monica Cash | 703710338 |
| 20. | 02/04/02 | 02/04/02 | 7186 | 206758413 | $500 | Cash | Executive Dir. | Monica Cash | 703710338 |
| 21. | 04/05/02 | 04/08/02 | 7189 | 206758413 | $500 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 22. | 04/22/02 | 04/24/02 | 7191 | 206758413 | $1,500 | Cash | Executive Dir. | Monica Cash | 703710338 |
| 23. | 05/02/02 | 05/02/02 | 3723 | 206703309 | $1,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 24. | 05/16/02 | 05/16/02 | 3724 | 206703309 | $3,000 | Cash | Executive Dir. | Monica Cash | 703710338 |
| 25. | 06/07/02 | 06/10/02 | 3725 | 206703309 | $1,500 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 26. | 06/21/02 | 06/24/02 | 3727 | 206703309 | $3,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |

| # | Date 1 | Date 2 | Check # | Account | Amount | Payee | Memo | Endorsed | Deposit Acct |
|---|--------|--------|---------|---------|--------|-------|------|----------|--------------|
| 27. | 07/05/02 | 07/05/02 | 3439 | 206703287 | $1,200 | Cash | Executive Dir. | Monica Cash | 703710338 |
| 28. | 07/31/02 | 07/31/02 | 3729 | 206703309 | $2,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 29. | 08/19/02 | 08/19/02 | 7200 | 206758413 | $3,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 30. | 09/04/02 | 09/05/02 | 3730 | 206703309 | $1,500 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 31. | 09/13/02 | 09/16/02 | 4382 | 206703279 | $500 | Cash | Executive Dir. | Monica Cash | 703710338 |
| 32. | 09/27/02 | 09/30/02 | 4388 | 206703279 | $500 | Cash | Executive Dir. | Monica Cash | 703710338 |
| 33. | 10/11/02 | 10/11/02 | 7205 | 206758413 | $1,500 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 34. | 11/04/02 | 11/06/02 | 7207 | 206758413 | $3,000 | Cash | Executive Dir. | Monica Cash | 703710338 |
| 35. | 11/21/02 | 11/25/02 | 3444 | 206703287 | $800 | Cash | Executive Dir. | Monica Cash | 1000002384237 |
| 36. | 12/06/02 | 12/09/02 | 4475 | 206703279 | $1,400 | Cash | Executive Dir. | Monica Cash | 703710338 |
| 37. | 01/08/03 | 01/08/03 | 4434 | 206703279 | $250 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 38. | 01/17/03 | 01/21/03 | 7210 | 206758413 | $500 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 39. | 02/06/03 | 03/24/03 | 6348 | 206703260 | $1,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 40. | 02/21/03 | 02/26/03 | 3733 | 206703309 | $1,500 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 41. | 03/04/03 | 03/12/03 | 3734 | 206703309 | $1,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 42. | 03/18/03 | 03/20/03 | 3446 | 206703287 | $600 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 43. | 04/03/03 | 04/07/03 | 3739 | 206703309 | $1,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 44. | 04/14/03 | 04/15/03 | 3447 | 206703287 | $1,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 45. | 04/24/03 | 04/28/04 | 3740 | 206703309 | $1,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 46. | 05/21/03 | 05/27/03 | 3448 | 206703287 | $2,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 47. | 06/10/03 | 06/16/03 | 3748 | 206703309 | $1,500 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 48. | 06/24/03 | 06/26/03 | 3449 | 206703287 | $2,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 49. | 07/02/03 | 07/03/03 | 3753 | 206703309 | $5,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 50. | 07/28/03 | 07/29/03 | 4263 | 206703295 | $600 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 51. | 08/25/03 | 08/26/03 | 7221 | 206758413 | $1,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 52. | 08/28/03 | 09/02/03 | 3771 | 206703309 | $2,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 53. | 08/28/03 | 09/03/03 | 3453 | 206703287 | $1,000 | Monica Cash | Executive Dir. | Not endorsed | 703710338 |
| 54. | 09/11/03 | 09/12/03 | 7223 | 206758413 | $1,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 55. | 10/06/03 | 10/0703 | 6364 | 206703260 | $5,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 56. | 10/22/03 | 10/23/03 | 6369 | 206703260 | $2,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 57. | 11/17/03 | 11/19/03 | 7228 | 206758413 | $1,500 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |
| 58. | 12/23/03 | 12/26/03 | 3457 | 206703287 | $1,000 | Monica Cash | Executive Dir. | Monica Cash | 703710338 |

10. CASH concealed the disbursements from WCF's business checking accounts (as set forth in Table A, above) by deleting the transactions from WCF's internal database in order to avoid detection.

11. As a registered political committee, WCF was required by law to file periodic financial disclosure reports with the FEC that accurately reflected, among other things, all of WCF's disbursements, including, but not limited to, all total disbursements as well as the name and address of any person who received a disbursement in an aggregate amount or value in excess of $200 within the calendar year, together with the date, amount, and purpose of any such disbursement. 2 U.S.C. §§ 434(b)(4), 434(b)(6)(B)(v).

12. WCF's internal database was the primary tool used by WCF to track donor information, contribution amounts, and disbursements. The data that CASH entered into WCF's internal database was ultimately used to complete financial disclosure reports filed with the FEC. Because she maintained WCF's internal database, CASH's duties included preparing the FEC financial disclosure reports.

13. When prompted, WCF's internal database automatically formatted the recorded data, calculated the financial information, and placed it into the proper FEC disclosure form. CASH sent the financial disclosure reports to the FEC electronically.

14. By deleting from the internal database the fraudulent disbursements to herself listed in Table A, above, CASH caused WCF's quarterly and other periodic reports to the FEC to be inaccurate because they understated WCF's actual disbursements. For example, on or about January 31, 2002, CASH filed a year-end report (FEC Filing No. 26483) with the FEC covering the period July 1, 2001 through December 31, 2001. In this year-end report, CASH listed WCF's total disbursements as $277,022.88 when, as CASH knew, in truth and in fact, WCF's actual total disbursements was $318,822.88.

15.  As a result of CASH's embezzlement of WCF funds and her attempts to conceal her embezzlement by deleting disbursements to CASH from WCF's internal database, CASH also caused the following reports to the FEC to be inaccurate by falsely reporting WCF's disbursements:

## TABLE B

| Date of Filing | FEC Filing Number | Filing Type | Dates Covered By Filing | Total WCF Disbursement Reported In Filing | Actual WCF Disbursement Due To Embezzlement |
|---|---|---|---|---|---|
| 04/12/02 | 32009 | April Quarterly | 01/01/02 - 03/31/02 | $223,260.20 | $225,160.20 |
| 07/09/02 | 41083 | July Quarterly | 04/01/02 - 06/30/02 | $175,315.22 | $185,815.22 |
| 10/15/02 | 54595 | Oct. Quarterly | 07/01/02 - 09/30/02 | $137,822.39 | $145,382.39 |
| 10/21/02 | 57434 | Pre-General | 10/01/02 - 10/16/02 | $50,519.77 | $52,019.77 |
| 12/04/02 | 67046 | Post-General | 10/17/02 - 11/25/02 | $184,626.52 | $187,626.52 |
| 01/29/03 | 73035 | Year-End | 11/26/02 - 12/31/02 | $35,854.39 | $37,254.49 |
| 07/30/03 | 92555 | July Quarterly | 01/01/03 - 06/30/03 | $452,782.34 | $459,532.34 |
| 01/28/04 | 105414 | Year-End | 07/01/03 - 12/31/03 | $417,357.22 | $427,857.22 |

\* \* \*

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to Count 2 in the Indictment filed against me on March 16, 2007. I am competent to make this statement, and I do so knowingly and voluntarily and because I am in fact guilty of the crime charged. I have discussed this factual basis with my attorneys, and I understand that this statement is admissible as evidence against me if I failed to comply with the plea agreement.

DATE: April 19, 2007

*Monica Cash*
MONICA J. CASH
Defendant


A.J. KRAMER
Federal Public Defender

*Carlos Vanegas*
CARLOS J. VANEGAS
Assistant Federal Public Defender
Federal Public Defender's Office
625 Indiana Avenue, NW, Suite 550
Washington, D.C. 20004

Attorney for Defendant