# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| vs. | ) Criminal No. 07-064 (ESH) |
| | ) |
| | ) |
| MONICA J. CASH, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

Pursuant to the Court's Order dated April 27, 2007, the United States respectfully submits this response to the Sentencing Memorandum filed today, August 9, 2007, by defendant Monica J. Cash.

## ARGUMENT

After admitting to embezzling $83,050 from her employer and pleading guilty to one count of possessing and uttering a forged security – in violation of 18 U.S.C. § 513(a) – defendant now remarkably contends that she should be sentenced only to: (1) probation for a period of five years; and (2) six months under electronic home monitoring consistent with her work schedule. See Defendant's Brief ("Def. Br.") at 10. For the reasons set forth below, the United States strongly opposes defendant's sentencing recommendation and respectfully requests that defendant be sentenced to, among other things, an imprisonment term of 16 months.[1]

---

[1] Pursuant to paragraph 9(b) of the Plea Agreement, the parties agreed that the total offense level applicable to the defendant's offense conduct is Level 12 (10-16 months). Although defendant is entitled to argue for a variance pursuant to 18 U.S.C. § 3553, the government

As a threshold matter, the fallacy underlying all of defendant's arguments is her erroneous assertion that the misconduct in this case was an "anomalous" event in what has otherwise been an "exemplary life."  Def. Br. at 2 ("prior to the instant offense Ms. Cash had never been arrested or charged with any criminal act") (emphasis added).  The July 30, 2007, Presentence Investigation Report ("PSR") prepared by the United States Probation Office reflects that defendant was arrested in Pennsylvania on three prior occasions – twice for passing bad checks and once for disorderly conduct.[2]  See PSR ¶¶ 35-37.  Although it appears that these arrests did not result in convictions, they suggest a life that was neither exemplary nor "honorable" (see Def. Br. at 3), and they certainly do not make her present embezzlement scheme an anomalous event involving aberrant or inexplicable behavior.

There are several other reasons why defendant should be sentenced to 16 months of imprisonment.  First and foremost, defendant's memorandum is entirely devoid of any discussion of the impact of her fraud upon her former employer, the Women's Campaign Fund ("WCF").  Notwithstanding this omission, defendant's embezzlement has in fact had a staggering financial impact upon WCF – so much so that it caused the organization's dissolution.[3]  WCF was a relatively small political organization with a total annual budget of approximately $700,000 to $900,000.  The loss of $83,050 over a roughly three-year period proved to be an insurmountable financial hurdle for WCF.  As a direct result of defendant's embezzlement, WCF became inactive

expressly reserved its right to object to any such request and to advocate for a sentence within the Sentencing Guidelines range, as previously calculated.

[2]       The Federal Bureau of Investigation reviewed NCIC for prior criminal conduct, but these arrests were apparently not reported by local law enforcement officials in the State of Pennsylvania and, thus, did not show up on the national database.

[3]       The Women's Campaign Fund has been reorganized as the Women's Campaign Forum.

and, on or about July 31, 2007, terminated its political committee registration with the Federal Election Commission ("FEC").

Moreover, since the detection and discovery of defendant's fraudulent scheme, WCF has incurred costs far beyond the $83,050, and it has exhausted all of its remaining resources attempting to determine the scope of the fraud and amending its prior FEC reports that were incorrectly stated.  According to a current WCF representative, WCF incurred approximately $42,000 in additional accounting and compliance fees; $36,000 in legal expenses; and $15,000 in additional staff and overhead costs.  At the time of its dissolution and termination, WCF had only $200.00 in its financial accounts.

Second, apart from, and in addition to, the financial impact, defendant's criminal conduct has caused irreparable damage to WCF's reputation.  As a registered political committee, WCF primarily relied upon donor contributions for the bulk of its revenue.  The announcement of the embezzlement charges and the related financial damages may have adversely impacted the decision of some third party contributors and members of the Board of Directors to continue donating to the organization.

Third, notwithstanding the government's agreement with defense counsel, the United States Probation Office has recommended in the PSR that defendant's sentence include a two-point enhancement under the United States Sentencing Guidelines ("U.S.S.G.") for abusing a position of private trust.  See U.S.S.G. § 3B1.3; PSR ¶¶ 25, 69-70.  The application of this two-point enhancement is admittedly a close one.[4]  The fact that this upward adjustment arguably

---

[4]     The touchstone for an abuse of private trust is "professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)" that facilitates significantly "the commission or concealment of the offense."  U.S.S.G. § 3B1.3

applies in this situation militates in favor of sentencing defendant to the upper range (i.e., 16 months) of incarceration for a total offense level of 12. And it certainly does not weigh in favor of a downward variance as proposed by defendant.

Fourth, a probation sentence (or a split sentence for that matter) would not be an appropriate outcome in the government's view given the steps taken by defendant to hide her illegal conduct. Defendant admittedly concealed the disbursements from WCF's business checking accounts by deleting the transactions from WCF's internal database. See Factual Basis for the Plea of Monica J. Cash at ¶ 10. These actions permitted defendant's embezzlement scheme to go undetected for nearly three years.

As noted above, the PSR also suggests that this is not the first time that defendant has concealed important information from WCF. At the time she was employed by WCF, defendant failed to disclose the prior arrests discussed above.[5] See PSR ¶¶ 35-37; see also Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact. . . ."); United States v. Mateo, 471 F.3d 1162, 1166-67 (10th Cir.

---

(Commentary Note 1). Arguments could be had on either side of this issue.

On the one hand, defendant was the only full-time WCF employee that was a non-officer. Her duties – although broad in scope – were essentially clerical in nature, and her criminal conduct primarily involved areas where she lacked authority and/or discretion – such as forging WCF checks and submitting FEC reports without review. On the other hand, defendant was responsible for all aspects of WCF's day-to-day business operations, and she concealed the disbursements from WCF's business checking accounts by deleting the transactions from WCF's internal database. The United States Probation Office has therefore asserted that defendant's position "afforded her greater latitude and significantly enable her to commit and conceal her conduct over for nearly three years." PSR ¶ 25.

[5]     Because defendant was apparently not convicted of any of these charges, she remains at a Criminal History Category I. See PSR ¶¶ 35-37.

2006) (district court did not err by considering uncontested facts included in the PSR relating to prior arrests that did not result in convictions), <u>cert. denied</u>, 127 S.Ct. 2890 (2007).  One can reasonably assume that, had defendant revealed these prior arrests to her prospective employer, WCF may not have hired her, let alone put her in charge of the organization's day-to-day banking needs.  <u>See</u> <u>Mateo</u>, 471 F.3d at 1167 (sentencing judge can "extrapolate[ ] from the uncontested facts in the PSR . . . to draw conclusions about characteristics relevant to sentencing factors enumerated in 18 U.S.C. § 3553(a)."  Indeed, a consideration of all of the factors under Section 3553(a) and, in particular – the seriousness of the offense, the history and characteristics of the defendant, the need for a sentence to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant – all weigh heavily in favor of the maximum term of imprisonment, 16 months, afforded for a total offense level of 12.

Lastly, defendant suggests in her memorandum that the bulk of the money that she embezzled was purportedly used to support her mother, who has a "gambling problem" and has engaged in unspecified "reckless behavior."  Def. Br. at 2.  This contention is unsupported by the PSR, and was not revealed to the FBI during a voluntary, non-custodial interview.

## <u>CONCLUSION</u>

For the foregoing reasons – including the nature and extent of defendant's misconduct, her admitted concealment, and the irreparable harm to WCF – the United States respectfully requests that defendant be sentenced to, among other things, 16 months of imprisonment.


Dated: August 9, 2007                    Respectfully submitted,

                                         WILLIAM M. WELCH II
                                         Chief, Public Integrity Section

                                         <u>s/Edward P. Sullivan              </u>

                                         EDWARD P. SULLIVAN
                                         Trial Attorney, Public Integrity Section
                                         Criminal Division
                                         U.S. Department of Justice
                                         1400 New York Avenue, N.W. - 12th Floor
                                         Washington, D.C. 20005